UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KEVIN C. McCUSKER                          CIVIL ACTION

v.                                         NO. 17-1214

UNUM LIFE INSURANCE CO.                     SECTION "F"
OF AMERICA, ET AL.

<u>ORDER AND REASONS</u>

Before the Court are cross motions for summary judgment.  For
the reasons that follow, the motions are DENIED without prejudice,
and this matter is REMANDED to the plan administrator for further
proceedings consistent with this Order and Reasons.

**Background**

This lawsuit for recovery of accidental death benefits under
the Employee Retirement Income Security Act of 1974 arises from
the plaintiff's wife's untimely death from prescription drug
overdose.

On February 10, 2016, Kevin C. McCusker found his wife,
Dominique Espinoza McCusker, dead in their house at 1238 North
Robertson Street in New Orleans.[1]  The Orleans Parish Coroner

_____

[1] According to Mrs. McCusker's obituary, she "died peacefully in
her sleep at her home in Treme, of natural causes, one day shy of
her 45th birthday."

1

classified her death as an "accident" caused by "multiple drug toxicity" as a result of "drug use." In this civil enforcement action, Mr. McCusker seeks to recover accidental death insurance benefits, which he claims are due to him under the terms of Mrs. McCusker's employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001. The insurer refused to pay the policy's accidental death benefits after concluding that the death was not accidental within the meaning of the policy.

The McCuskers were married on May 3, 2006.[2] Beginning in 2009, Mrs. McCusker was employed by Fidelity Bank and was a participant in its group life insurance and accidental death plan. Effective September 1, 2009, Unum Life Insurance Company of America and Unum Group (Unum) issued Group Life Insurance Policy number 136322 001 to the policyholder, Fidelity Bank Plan and Fidelity Bank (Fidelity), as part of an Employee Welfare Benefit Plan, as defined by the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. Under the terms of the plan, Unum is responsible for administration of claims and is vested with

---

[2] The record indicates that Mr. and Mrs. McCusker were estranged at the time of her death, but there is no dispute that Mr. McCusker was the named beneficiary of the accidental death policy.

discretionary authority to make benefit determinations under the Plan.[3]

The Unum policy states that loss of life is a "covered loss" if death results from an "accidental bodily injury" within 365 days from the date of the accident. The Glossary section of the policy defines "accidental bodily injury," as "bodily harm not contributed to by another cause," and it defines "injury" as "a bodily injury that is the direct result of an accident and not related to any other cause."

The policy also contains certain exclusions from coverage. In "WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN," the policy states that it "does not cover any accidental losses caused by, contributed to by, or resulting from" the following:

---

[3] The policy provides:
DISCRETIONARY ACTS
The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefits determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

...

     -the use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your physician. The exclusion will not apply to you if the chemical substance is ethanol.

     -disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.

For several years prior to her death on February 10, 2016, Mrs. McCusker had been undergoing long-term medical treatment for physical and mental ailments. Nicholas Pejic, M.D., was Mrs. McCusker's psychiatrist. She also treated with Mark Alain Dery, D.O., for pain management. Mrs. McCusker had been diagnosed with chronic pain and adjustment disorder with mixed anxiety and depressed mood. To treat these conditions, she was prescribed a variety of medications that had the effect of depressing the central nervous system.

On October 16, 2013, Dr. Pejic and Mrs. McCusker discussed changing her medication, including the purpose, dosage, directions, side effects, risks, benefits, and options. Months later on December 31, 2013, Dr. Pejic and Mrs. McCusker spoke by telephone; Dr. Pejic warned her about drug dependency and advised her to take her medications more sparingly. Mrs. McCusker agreed to try to reduce her doses. Dr. Pejic noted that Mrs. McCusker's

4

Xanax use would be monitored.  On June 26, 2014, Dr. Pejic spoke with Mrs. McCusker regarding the danger of taking too much medication with morphine; Dr. Pejic noted that Mrs. McCusker "understands, says her internist is aware of current treatment."

On October 4, 2014, Dr. Dery saw Mrs. McCusker.  Dr. Dery refilled her chronic medications and indicated that he was starting her on Methadone 2.5mg every 12 hours for two weeks, then 2.5 mg every eight hours for two weeks, and then 5 mg every 12 hours until finally reaching 5 mg every eight hours in an attempt to "lower the reliance on her chronic opioids."  On November 21, 2014, Dr. Pejic saw Mrs. McCusker, who told him that she might start methadone with her pain doctor.  (Dr. Dery had already started her on methadone in October).

As of November 14, 2015, Dr. Dery was prescribing Mrs. McCusker MSContin 60 mg every 12 hours; Methadone 10 mg every six hours; and Oxycodone 10 mg every four hours.  As of December 2, 2015, Dr. Pejic was prescribing Mrs. McCusker 2 mg of Xanax, as needed at night; 300 mg of Wellbutrin daily; and 10 mg of Elavil twice daily.

The day after Mr. McCusker found his wife dead, on February 11, 2016, the Orleans Parish Coroner, Jeffrey Rouse, M.D., completed an autopsy.  The Coroner's Report concludes by listing

these "[f]indings": "I. Multiple Drug Toxicity; II. Left ventricular hypertrophy (wall thickness 1.8 cm) and III. Right frontal and temporal subscapular hemorrhage." The classification of death is listed as "Accident." Mrs. McCusker's liver had 5.2 micrograms/GM of Methadone and 0.50 micrograms/GM of Methadone Metabolite, and the toxicology report indicated the following substances in the following concentrations in her blood at the time of her death:

| | |
|---|---|
| Alcohol | 0.042 gm% (42 mg/dl) |
| Amitriptyline | 0.19 micrograms/ML |
| Diphenhydramine | 0.72 micrograms/ML |
| Bupropion | 0.46 micrograms/ML |
| Nordiazepam | 0.058 micrograms/ML |
| Diazepam | 0.073 micrograms/ML |
| Methadone | 0.75 micrograms/ML |
| Methadone metabolite (EDDP) | 0.21 micrograms/ML |

In classifying her death as an accident resulting from multiple drug toxicity, the drugs detected in her system included Elavil (amitriptyline), Wellbutrin (buproprion), and Methadone, all of which had been prescribed to her as treatment for her medical conditions. The other medications detected included nordiazepam and diazepam (valium), which leading up to her death had not been

prescribed,[4] and diphenhydramine (Benadryl), which is an over the counter medication. It is undisputed that Mrs. McCusker's death resulted, in whole or in part, from the ingestion of medications prescribed to her as treatment for anxiety/depression and chronic pain.[5]

Upon receiving proof of Mrs. McCusker's death, Unum advised Mr. McCusker that he was entitled to the $400,000 group basic life insurance benefits payable to him as beneficiary under the policy. After receiving the coroner's report noting that the death was ruled an accident, Mr. McCusker filed a claim for accidental death benefits on May 10, 2016. On July 13, 2016, Unum's senior clinical consultant, Marnie Webb, RN, opined that it was reasonable to conclude that Mrs. McCusker's death was caused by multiple drug toxicity.[6]

---

[4] The plaintiff appears to dispute whether or not Mrs. McCusker had been prescribed nordiazepam at the time of her death. The Unum appeals specialist notes in her review of Mr. McCusker's appeal that "[n]o prescription has been identified as filled/prescribed since 04/16/11." For his part, the plaintiff does not indicate where in the voluminous pharmacy records the prescriptions for nordiazepam and diazepam appear. The record also indicates that there were additional medications that had been prescribed to Mrs. McCusker, but that were not present in her system at her death.
[5] It is likewise undisputed that Unum denied the accidental death benefits claim based only on its findings that multiple drug toxicity was not a covered "accident" and, even if it was, that the drug exclusion applied to exclude coverage.
[6] Webb wrote:

Unum denied the accidental death claim on July 22, 2016, explaining:

> Accidental Death benefits are not payable when the death is not from bodily harm and is contributed to by any other cause. It has been determined Dominque Espinosa-McCusker's death was caused by "multiple drug toxicity"; this is not considered to be from bodily harm and is contributed to by any other cause.

> In addition, there is an exclusion in the policy that applies to this claim. The exclusion states that benefits are not payable when the loss was caused by, contributed to by or resulted from voluntary use of any prescription or non-prescription drug, poison, fume or other chemical substance unless taken according to the prescription or as directed by the physician. Since her death was contributed to by prescription drugs not taken as prescribed in combination with over the counter drug which was not taken according to general dosing instructions and alcohol, this policy exclusion also applies to our decision.

Unum also explained that "[o]f the drugs indicated on the toxicology report, only Amitriptyline, 20 mg at bedtime, Bupropion, XL 300 mg daily, and Methadone, 10 mg every six hours; were found to have been prescribed." Even though prescribed, Unum

---

In summary, based on the available medical information, it is reasonable that the insured's use of amitriptyline, methadone, and diazepam, which are prescription medications that were not taken in accordance with physician direction; diphenhydramine, which is an OTC medication that was not taken in accordance with general dosing instructions; bupropion, which is a prescription medication that may or may not have been taken as prescribed; and alcohol caused the insured's death due to multiple drug toxicity.

determined that the anti-depressant Amitriptyline "was not taken as prescribed" given the level found in her system compared to results of a study in which patients receiving higher daily doses indicated lower concentration levels in their system than Mrs. McCusker. Unum also determined that the over the counter antihistamine and sleep aid, diphenhydramine, was not taken in accordance with the dosing instructions given that Mrs. McCusker's level was more than six times the upper range of the therapeutic level. Unum also explained in its denial letter that Mrs. McCusker's post-mortem liver revealed a lethal amount of Methadone, which indicated that Mrs. McCusker had not taken the medication as prescribed. Given that Mrs. McCusker had consumed alcohol and that the levels of prescribed medications Amitriptyline and Methadone indicated that they were not taken as prescribed, and Diazepam had not been prescribed, Unum determined that benefits would be precluded under the drug exclusion.

On September 21, 2016, McCusker appealed Unum's claim decision denying accidental death benefits. Mr. McCusker's attorney wrote that Unum wrongly denied benefits because the drugs listed in the toxicology report had been taken in accordance with

her physicians' directives, as evidenced by the pharmacy and physician records.[7]

Unum reviewed all of the claim documentation and medical records provided on appeal. Unum's clinical consultant noted that the toxicology report indicated that Mrs. McCusker had a concentration of 5.2 mcg/gm of Methadone in her liver and her Methadone Metabolite level was 0.50 mcg/gm. The consultant also noted that the average Methadone liver concentrations in fatalities is 3.8 mcg/gm with a range of 1.8-7.5 mcg/gm. It was also noted that while the Diazepam (Valium) found was within the therapeutic range, it had not been prescribed to Mrs. McCusker. Based on the review, Unum's consultant observed, among other things, that:

- Each of the medications on the toxicology report have a sedative effect. Even if the drugs were taken as directed,

---

[7] Disputing the denial of accidental death benefits, Mr. McCusker's attorney wrote:

> [T]he drugs listed in the toxicology report were in fact taken according to prescription and as directed by her physicians. Medical records show that Mrs. McCusker was being prescribed relatively high amounts of Nordiazepam (Xanax), Buproprion (Wellbutrin) and Amitriptyline (Elavil) by her Psychiatrist, Nocholas Pejic, MD. Dr. Pejic had increased the number of sleeping aids he was prescribing up until her death.... Concurrently, Mark Alain Dery, D.O. was prescribing Mrs. McCusker large amounts methadone, morphine and oxycodone....

their cumulative effect on the central nervous system could result in combined toxicity.

- Methadone can be associated with serious, life-threatening, or fatal respiratory depression, which has been reported with the use of long-acting opioids, even when used as recommended. Respiratory depression from opioid use, if not immediately recognized and treated, may lead to respiratory arrest and death. The peak respiratory depressant effect of Methadone occurs later, and persists longer than the peak analgesic effect. The use of Methadone with other central nervous system depressants can increase the risk of respiratory depression, profound sedation, coma, and death.

By letter dated November 10, 2016, Unum advised Mr. McCusker's attorney that it was upholding its determination that Mr. McCusker was not entitled to receive accidental death benefits. Unum stated that the claim was correctly denied, after determining that Mrs. McCusker's death was caused or contributed to by multiple drug toxicity and, thus, was not an accidental bodily injury as defined by the policy. Unum also stated that the claim would likewise not be payable pursuant to the policy's drug exclusion because the amount of Methadone found in the decedent's liver was in the fatal range and she had taken Diazepam, another central nervous system depressant, which was not prescribed to her.[8]

---

[8] Unum also wrote:

Pharmacy records also note Ms. Espinoza-McCusker filled a prescription for 180 tablets of Oxycodone 10 mg on Jan. 14, 2016, 60 tablets of Morphine 60 mg on Jan. 14, 2016, and 30 tablets of Alprazolam 2 mg on Jan. 19, 2016. None of these medications were found in her toxicology. It is unknown why these medications were not found in her body, but it might explain why she took Diazepam (if

After his appeal was denied, Kevin McCusker sued Unum Life Insurance Company of American, Unum Group, Fidelity Bank, and Fidelity Bank Plan to recover the accidental death benefits he claims are due to him under the terms of the plan. Both sides now seek summary relief in their favor based on the administrative record.[9]

I.

"Standard summary judgment rules control in ERISA cases." Ramirez v. United of Omaha Life Ins. Co., 872 F.3d 721, 725 (5th Cir. 2017)(citations omitted). Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for

---

she had no Alprazolam), or why she took an increased, but fatal, dose of Methadone (if she had no Oxycodone or Morphine).

[9] Upon the parties' joint request, the Court cancelled the trial and related deadlines so that this case could be decided on the cross motions for summary judgment and administrative record.

the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

ERISA confers jurisdiction on federal courts to review benefit determinations by fiduciaries or plan administrators. 29 U.S.C. § 1132(a)(1)(B). If the administrator denies benefits to the participant, section 1132 of ERISA authorizes the beneficiary to bring suit in federal district court "to recover benefits due...under the term of the plan, to enforce...rights under the terms of the plan, or to clarify...rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B).

The standard of judicial review afforded benefits determinations depends upon whether a claims administrator is vested with discretionary authority. Courts generally review benefit determinations *de novo*. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Conkright v. Frommert</u>, 559 U.S. 506, 512 (2010)(federal courts review the decisions of ERISA plan administrators under standards derived from principles of trust law insofar as the plan document itself dictates the appropriate level of review). But "[w]hen an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." <u>Ariana M. v. Humana Health Plan of Tex., Inc.</u>, 884 F.3d 246 (5th Cir. 2018)(*en banc*);[10]

---

[10] Citing <u>Bruch</u>, 489 U.S. at 115, the Fifth Circuit held that, when a plan has no valid delegation clause, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed *de novo* regardless of whether the benefits denial is based on an interpretation of plan language or an administrator's factual determination that a beneficiary is not eligible. In so holding, a majority of the *en banc* court overruled its precedent, <u>Pierre v. Conn. Gen. Life Ins. Co.</u>, 932 F.2d 1552 (5th Cir. 1991). In <u>Pierre</u>, the court held that challenges to an administrator's factual determination that a beneficiary is not eligible must be reviewed under the same abuse of discretion standard that applies when plans have delegated discretion. In overruling <u>Pierre</u>, the Fifth Circuit is now aligned with other Circuit Courts of Appeals, which have determined that the Supreme Court in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989) mandated that courts apply a *de novo* standard of review to all ERISA benefits determinations regardless of whether the denials under review were legally-based plan interpretations or factually-based eligibility

15

see <u>Anderson v. Cytec Indus., Inc.</u>, 619 F.3d 505, 512 (5th Cir. 2010)(When a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits.).  Thus, where, as here,[11] "an administrator has discretionary authority with respect to the decision at issue, the standard of review [is] abuse of discretion."  <u>See</u> <u>White v. Life Ins. Co. of N. Am.</u>, 892 F.3d 762, 767 (5th Cir. 2018)(quoting <u>Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC</u>, 878 F.3d 478, 483 (5th Cir. 2017)(citations omitted)).  Therefore, this Court is limited to determining whether Unum abused its discretion in reviewing Unum's denial of benefits.

The parties do not quarrel over these governing legal principles.  Although neither side addresses the multi-step approach endorsed by the Fifth Circuit for reviewing benefits determinations, for the sake of completeness, the Court notes that review of the administrator's interpretation of a plan proceeds in

_____

determinations, unless an administrator has discretionary authority.  <u>See</u> <u>Ariana M.</u>, 884 F.3d at 248, 255.

[11] Here, it is undisputed that the plan vests Unum with discretionary authority to make benefits determinations under the plan.

three steps.[12] <u>Connecticut Gen. Life. Ins. Co. v. Humble Surgical Hosp., L.L.C.</u>, 878 F.3d 478, 483 (5th Cir. 2017). First, the Court examines whether the plan administrator's reading of the plan was legally correct;[13] if it was legally correct, there can be no abuse of discretion. <u>Id.</u> If the Court finds the administrator's interpretation was not legally correct, then the Court proceeds to determine whether the decision was an abuse of discretion.[14] <u>Id.</u> "Only upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest." <u>Stone</u>, 570 F.3d at 257. Finally, the Court assesses

---

[12] Some panels refer to only two steps, seeming to conflate the substantial evidence and abuse of discretion inquiries. <u>See</u>, <u>e.g.</u>, <u>Stone v. UNOCAL Termination Allowance Plan</u>, 570 F.3d 252, 257 (5th Cir. 2009).

[13] The Fifth Circuit has instructed:

> To determine if the administrator's decision is legally correct, the court considers: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.... The factor most worth considering is whether the administrator's interpretation is consistent with a fair reading of the plan.

<u>Porter v. Lowe's Companies, Incorporated's Business Travel Accident Insurance Plan</u>, 731 F.3d 360, 364 n.8 (5th Cir. 2013)(internal quotations and citations omitted).

[14] These factors are relevant to determining whether the plan administrator abused its discretion: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. <u>Porter</u>, 731 F.3d at 364 n.9 (5th Cir. 2013)(internal quotations and citations omitted).

the evidentiary basis for the denial of benefits to consider whether the plan administrator's decision to deny benefits was supported by substantial evidence. Humble Surgical Hosp., L.L.C., 878 F.3d at 483. The Court is "not confined to this test; [it] may skip the first step if [it] can more readily determine that the decision was not an abuse of discretion." Holland v. Int'l Paper Co. Retirement Plan, 576 F.3d 240, 246 n.2 (5th Cir. 2009).

The deference inherent in an abuse of discretion standard of review means that "no court may substitute its own judgment for that of the plan administrator." McCorkle v. Met. Life Ins. Co., 757 F.3d 452, 457-58 (5th Cir. 2014)(citations omitted). Indeed, the Fifth Circuit has admonished district courts that "they are serving in an appellate role ... and their latitude in that capacity is very narrowly restricted by ERISA and its regulations, ... including the oft-repeated admonition to affirm the determination of the plan administrator unless it is 'arbitrary' or is not supported by at least 'substantial evidence' – even if that determination is not supported by a preponderance." McCorkle, 757 F.3d at 456-57.

An abuse of discretion occurs when "the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." Holland, 576 F.3d at 246 (internal quotation

marks and citation omitted). This is not a demanding review: a plan administrator abuses its discretion "only where the plan administrator acted arbitrarily or capriciously," and a decision is arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." See id. (citation omitted); see also Anderson, 619 F.3d at 512. The Court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." Corry v. Liberty Life Assur. Co. of Boston, 499 F.3d 389, 398 (5th Cir. 2007)(quotation omitted). As a factor in determining whether Unum has abused its discretion in denying benefits, the Court also must consider Unum's conflict of interest (inherent in its dual role evaluating claims for benefits and paying benefits claims). See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008); see also Holland, 576 F.3d at 247 n.3 (noting that the Supreme Court in Glenn "directly repudiated the application of any form of heightened standard of review to claims denials in which a conflict of interest is present."). The significance of this factor is determined on a case by case basis; a structural conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits

decision." Glenn, 554 U.S. at 108, 117. "When a claimant...does not come forward with any evidence that the conflict of interest influenced the...benefits decision, the court gives this factor little or no weight." McCorkle, 757 F.3d at 458 n.17 (citations omitted).

Whether the plan administrator's decision is supported by substantial evidence is the third inquiry. Anderson, 619 F.3d at 512 (citation omitted)("In addition to not being arbitrary and capricious, the plan administrator's decision to deny benefits must be supported by substantial evidence."); Truitt v. Unum Life Ins. Co. of America, 729 F.3d 497, 509 (5th Cir. 2013)(where the parties did not dispute that there was substantial evidence to support benefits decision, the court need only consider whether the plan administrator "otherwise abused its discretion" in denying benefits).[15] "Substantial evidence," the Fifth Circuit has instructed, "is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

_____

[15] The focus of the substantial evidence inquiry is on the plan administrator's decision; it is irrelevant to the reviewing court whether substantial evidence exists to support a plaintiff's claim. See Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004)(rejecting the plaintiff's argument that substantial evidence supported her claim of total disability as "misapprehending the burden of proof under ERISA" and noting that "[w]e are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance.").

adequate to support a conclusion." Anderson, 619 F.3d at 512 (citations omitted). In making this inquiry, the Court is "constrained to the evidence before the plan administrator." Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C., 878 F.3d 478, 485 (5th Cir. 2017)(citation omitted).

Given the deference this Court owes the plan administrator, Mr. McCusker bears the burden to prove that the denial of benefits was arbitrary and capricious or that substantial evidence does not support Unum's decision. White v. Life Ins. Co. of N. Am., 892 F.3d 762, 770 (5th Cir. 2018)(citing George v. Reliance Standard Life Ins. Co., 776 F.3d 349, 352 (5th Cir. 2015)); Anderson, 619 F.3d at 512-13.

*B.*

Federal common law governs the rights and obligations stemming from ERISA-regulated plans, including the interpretation of all ERISA-regulated plan provisions. Provident Life & Acc. Ins. Co. v. Sharpless, 364 F.3d 634, 641 (5th Cir. 2004)(citation omitted). Under federal common law, courts construing ERISA plan provisions "are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." Id. "ERISA plans are interpreted in their 'ordinary and popular sense as would a person of average intelligence and experience.'"

<u>Stone v. UNOCAL Termination Allowance Plan</u>, 570 F.3d 252, 260 (5th Cir. 2009).  The Court must therefore interpret plan provisions "as they are likely to be understood by the average plan participant, consistent with the statutory language."  <u>Id.</u> (citation, internal quotation marks omitted).

The only purely legal issue disputed by the parties is whether the doctrine of *contra proferentem* applies to an ERISA-governed policy that grants the plan administrator discretion to interpret plan provisions and to make benefit determinations.  Both sides invoke cases in support of their respective positions, revealing an apparent conflict in the case literature on this point.  A closer look suggests that the case literature embraces this general rule: when an ERISA plan vests the administrator with discretion to interpret plan terms, the administrator has the discretion to resolve ambiguities.  Thus, in determining whether a plan administrator's plan interpretation was "legally correct," in particular, whether the interpretation is consistent with a fair reading of the plan, the Court need not resort to the doctrine of *contra proferentem* if the plan administrator was granted discretion to interpret plan terms.  <u>Compare</u> <u>McCorkle v. Metropolitan Life Ins. Co.</u>, 757 F.3d 452, 458 (5th Cir. 2014)(noting that "[t]he district judge...disregarded the rule that, when an ERISA plan vests a fiduciary with discretion to

interpret plan terms, the fiduciary 'has the power to resolve ambiguities.'"); <u>Porter</u>, 731 F.3d at 365 n.13 (citation omitted)("Mr. Porter argues throughout that ambiguities must be construed in favor of the insured. While typically true, this is not the case when a plan administrator is given the discretion to interpret the terms of the plan."); <u>Smith v. Life Ins. Co. of N. Am.</u>, 459 Fed.Appx. 480, 484 (5th Cir. 2012)(unpublished, per curiam)(rejecting application of *contra proferentem* "when reviewing an administrator's interpretation of plan terms for an abuse of discretion");[16] <u>High v. E-Sys., Inc.</u>, 459 F.3d 573, 579 (5th Cir. 2006)(citation omitted)(rejecting the plaintiff's

---

[16] In <u>Smith</u>, the evidence showed that the insured, who was being treated for depression at the time of her death, had ingested eight different prescription drugs, that she had consumed more than 10 times the maximum recommended dosages of Ambien and hydrocodone, that she had consumed independently-lethal amounts of hydrocodone and merperidine, and that two of the drugs had not been prescribed to her. 459 Fed.Appx. at 481-82. The parties disputed whether the insured had intended to consume the drugs or did so accidentally while in a hallucinogenic state caused by the Ambien. <u>Id.</u> at 482. The plan administrator denied the widower's claim for accidental death benefits based on three policy exclusions; the district court granted summary judgment in favor of the plaintiff. <u>Id.</u> at 482-83. Reversing and remanding for entry of judgment in favor of the plan administrator, the Fifth Circuit considered only whether the voluntary ingestion exclusion applied; it determined that the district court erred in failing to afford the plan administrator deference in its construction of the ambiguity of "voluntary," and held that, "even if Mrs. Smith's death was caused by an accidental overdose, as argued by Mr. Smith, it still falls within the voluntary ingestion exclusion as it is interpreted by LINA." <u>Id.</u> at 482 n.1, 485.

argument that ambiguous plan terms must be construed against the plan administrator, and noting "by giving [the plan administrator] complete discretion to interpret the plans, if there had been an ambiguity, [the plan administrator] was empowered to resolve it, exercising 'interpretive discretion.'")[17] **with** Ramirez v. United of Omaha Life Ins. Co., 872 F.3d 721, 727 (5th Cir. 2017)(noting that "[i]f the policy language is ambiguous, then the court should construe the policy against the drafter," but finding that the doctrine did not apply because the policy terms were not ambiguous);[18] Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451-52 (5th Cir. 1995)(citations omitted)(in a case where "the policy included no specific grant of discretionary authority to the administrator

---

[17] The plaintiff argues that "[t]he Fifth Circuit recently explained that courts must apply the doctrine of *contra proferentem* to determine the legal question of what the policy means in the first instance." Troublingly, in support of this argument, the plaintiff cites an unpublished Order and Reasons by another Section of this Court, Surratt v. Unum Life Ins. Co. of Am., No. 11-2943, 2013 WL 4648460, at *5 (E.D. La. Aug. 29, 2013), not a Fifth Circuit opinion; and, the case cited, Surratt, cites High for the proposition that the reviewing court must apply the rule of *contra proferentem*. High, of course as noted, held the opposite: "by giving [the plan administrator] complete discretion to interpret the plans, if there had been an ambiguity, [the plan administrator] was empowered to resolve it, exercising 'interpretive discretion.'" High, 459 F.3d at 579.

[18] Notably, the Fifth Circuit assumed, without deciding, that the standard of review was de novo, as it did in Green v. Life Ins. Co. of N. America, 754 F.3d 324, 329-30 (5th Cir. 2014)(declining to decide whether the plan sufficiently conferred discretion to trigger abuse of discretion standard of review).

to construct plan terms," observing that the district court's application of the rule of *contra proferentem* "comport[ed] with this court's holding in ERISA cases" as well as the rule of other circuits);[19] <u>Wegner v. Standard Ins. Co.</u>, 129 F.3d 814, 818 (5th Cir. 1997)(applying doctrine in *de novo* review of plan where administrator lacked discretion to interpret policy provisions).[20]

---

[19] At least two of the other circuit opinions on which <u>Todd</u> relied considered a plan in which the plan administrator was *not* granted discretionary authority to construe plan terms. <u>See</u> <u>Glocker v. W.R. Grace & Co.</u>, 974 F.2d 540, 544 (4th Cir. 1992); <u>see also</u> <u>Heasley v. Belden & Blake Corporation</u>, 2 F.3d 1249 (3d Cir. 1993)(where plan language was ambiguous as to whether discretion was granted to the plan administrator, plan was interpreted under the rule of *contra proferentem* as not granting discretion). The Ninth Circuit opinion invoked by the <u>Todd</u> panel, <u>Kunin v. Benefit Trust Life Ins. Co.</u>, 910 F.2d 534, 537 (9th Cir. 1990), applies the rule, but implies that the administrator lacked discretion to determine plan eligibility and construe plan terms (insofar as the court "acknowledge[es] that after <u>Firestone</u> the administrator's decision would...be reviewed *de novo*"). The Ninth Circuit has in other opinions rejected application of *contra proferentem* under the circumstances presented by the present case: "it is not proper to rely on this principle of construction where, as here, the Plan grants the fiduciary explicit discretion to interpret the Plan." <u>Winters v. Costco Wholesale Corp.</u>, 49 F.3d 550, 554 (9th Cir. 1995)(holding that the rule of *contra proferentem* is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan.").

[20] There is at least one case that applied the doctrine notwithstanding that the plan administrator had discretion to construe plan terms. <u>See</u> <u>Rhorer v. Raytheon Eng'rs & Constructors, Inc.</u>, 181 F.3d 634, 642 (5th Cir. 1999)("[T]his Court uses a unique two-step approach to apply the abuse of discretion standard, and *contra proferentem* may properly be used under the first step" regardless of whether the plan administrator has expressly been given discretion to interpret the plan), <u>abrogated on other grounds by</u> <u>CIGNA Corp. v. Amara</u>, 131 S.Ct. 1866 (2011). But another panel

Application of the doctrine of *contra proferentem* seems appropriate only if the Court considers whether Unum's decision was legally correct, an issue which the parties did not brief. Even if Unum's interpretation of the plan was legally incorrect, the Court would nevertheless proceed to consider whether Unum abused its discretion; the Court may skip this first step. See Connecticut General Life Ins. Co. v. Humble Surgical Hosp., L.L.C., 878 F.3d 478, 484 (5th Cir. 2017)(skipping the "legally correct" inquiry, proceeding to determine whether the administrator abused its discretion, and noting that "a plan administrator does not abuse its discretion when construing plan provisions unless its interpretation is arbitrary or capricious.").

### III.

### *A.*

In its motion for summary judgment, Unum submits that it did not abuse its discretion in determining that Mrs. McCusker's death did not result from accidental bodily injury. Only if the Court

---

of the Fifth Circuit later limited Rhorer's holding to ambiguities in plan summaries: "Ambiguities in a plan summary are resolved in favor of the beneficiary." Koehler v. Aetna Health, Inc., 683 F.3d 182, 188 (5th Cir. 2012)(noting that, although the plan gave Aetna discretion to resolve ambiguities in the *plan* language in its favor, "Aetna's discretion to resolve ambiguities in the plan does not extend to the plan *summary*, notwithstanding that in this instance the summary is a verbatim copy of text in the plan.")(emphasis in original).

finds that this determination was not supported by substantial evidence, Unum contends, should the Court consider Unum's alternate basis for denial, application of the drug exclusion in the policy. Finally, if the Court finds that Unum's two grounds for denial of benefits were not supported by substantial evidence, Unum urges the Court to consider a third ground -- application of the policy's medical treatment exclusion. In his cross motion, the plaintiff submits that Unum improperly denied benefits under the accidental death plan, given that: his wife's death from multiple drug toxicity resulted from accidental bodily injury that was not contributed to by any other cause; the plan's drug exclusion, which is less favorable than Louisiana law, must be conformed to the statutory language of La.R.S. 22:975(10), which undermines Unum's decision that coverage was barred by the exclusion. Finally, the plaintiff contends that the Court may not consider the medical treatment exclusion as supporting Unum's denial of benefits because this exclusion was only first advanced in this litigation.

Mindful that this Court is serving in an appellate role in evaluating Unum's denial of accidental death benefits, the Court turns to consider whether Unum's denial of benefits was arbitrary and capricious and supported by substantial evidence.

Unum's first basis for denying accidental death benefits was its determination that Mrs. McCusker's death from multiple drug toxicity was not from "bodily harm" and it was "contributed to by any other cause" and, therefore, her death was not a covered accident within the meaning of the accidental death and dismemberment policy. The Court's review of this basis for denying benefits is hindered by Unum's failure during administrative proceedings to offer a specific reason or an analysis sufficient to satisfy the specificity required to give Mr. McCusker fair notice mandated by ERISA regulations. That its review concerning whether the death was a covered accident was not sufficiently meaningful is amplified by Unum's invocation of the medical treatment exclusion for the first time in this litigation. Unum advances the position in this litigation that death by multiple drug toxicity is not a covered accident because death resulted at least in part by ingestion of medicine prescribed to treat illnesses. Unum invokes this same "medical treatment" theory to preclude coverage in invoking the medical treatment exclusion.

*B.*

"[S]ection 1133 requires an administrator to provide review of the specific ground for an adverse benefits decision." <u>Rossi v. Precision Drilling Oilfield Services Corp. Employee Benefits</u>

<u>Plan</u>, 704 F.3d 362, 367 (5th Cir. 2013)(quoting <u>Robinson v. Aetna</u>

<u>Life Ins. Co.</u>, 443 F.3d 389, 393 (5th Cir. 2006)).   The Fifth

Circuit explained:

> We held [in <u>Robinson</u> that] the administrator did not substantially comply with ERISA's procedural requirements because "Robinson never had an opportunity to contest at the administrative level [the] new basis for terminating his benefits."   That holding contemplated two important policies.   First, "[t]he notice requirements of [subsection (1)] help ensure the meaningful review [on administrative appeal] contemplated by subsection (2)."   Second, "mandating review of the specific ground for a termination is consistent with our policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court."   The same policy reasons for disallowing switching reasons on administrative appeal apply here. Because "[t]he purpose of section 1133 is to ... ensure meaningful review of [a] denial [of benefits]," and to be meaningful the review must contemplate specific reasons for denial, it is impossible for the purpose of § 1133 to be fulfilled where the Plan denied Rossi a full and fair review by changing its basis for denial of benefits on administrative appeal.   Therefore, we hold the Plan did not substantially comply with the procedural requirements of ERISA.

<u>Id.</u> at 367-68 (internal citations, footnotes omitted).[21]

---

[21] "Allowing plan administrators to offer new justifications for a denial after the claims process has ended would undermine the claims system that Congress envisioned when it drafted ERISA's administrative review provisions." <u>See</u> <u>George v. Reliance Standard Life Ins. Co.</u>, 776 F.3d 349, 353 (5th Cir. 2015)(holding that the Court is "limited to considering whether the record supports the reasons that [the plan administrator] provided to [the plaintiff] during the claims proceeding.").

Unum's denial based on its finding that death from multiple drug toxicity was not a covered accident was considered in conclusory fashion by Unum in its initial and appellate review of Mr. McCusker's claim. Only once litigation was instituted did counsel add content to the shell of Unum's denial on this basis. Unum's litigation position is that Mrs. McCusker's death was not accidental because it was caused by medication she took during the course of medical treatment, which is in fact the content of an exclusion in the policy, which Unum failed to invoke until this litigation was instituted. The policy "does not cover any accidental losses caused by, contributed to by, or resulting from":

> ...
>
> –disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.

In this regard, the Court finds that the plan administrator did not substantially comply with ERISA's procedural requirements because the plaintiff never had the opportunity to contest at the administrative level what is essentially a new basis for terminating benefits. See Rossi v. Precision Drilling Oilfield Servs. Corp. Emp., 704 F.3d 362, 367 (5th Cir. 2013). Notably, "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to

substantially comply with the procedural requirements of ERISA."
Id. at 368 (citation omitted). "A remand for further action is
unnecessary only if the evidence clearly shows that the
administrator's actions were arbitrary and capricious, or the case
is so clear cut that it would be unreasonable for the plan
administrator to deny the application for benefits on any ground."
Lafleur v. Louisiana Health Service and Indem. Co., 563 F.3d 148,
158 (5th Cir. 2009)(citation omitted). "If the administrative
record reflects, at minimum, a colorable claim for upholding the
denial of benefits, remand is usually the appropriate remedy."
Id. (citation omitted).

Here, the plaintiff fails to persuade the Court that the
administrator's actions were arbitrary or capricious, or that it
would have been unreasonable for the administrator to deny the
plaintiff's claim on any ground. Because it is not clear that
Unum abused its discretion, remand to the administrator is
warranted to remedy the plan administrator's procedural
noncompliance. The plaintiff will be provided an opportunity to
administratively contest the specific ground for denial raised in
this litigation: the medical treatment exclusion. There is
certainly a colorable claim for denial of benefits based on the
medical treatment exclusion. See Lafleur, 563 F.3d at 158 ("If
the administrative record reflects, at a minimum, a colorable claim

for upholding the denial of benefits, remand is usually the appropriate remedy."). Indeed, an exclusion in an accidental death policy for medical treatment ordinarily includes death caused by accidentally overdosing on a drug prescribed by a doctor for a medical condition. See, e.g., Barkerding v. Aetna Life Ins. Co., 82 F.2d 358, 359 (5th Cir. 1936)("Medical and surgical treatment mean what is done by a physician in diagnosing a bodily ailment and seeking to alleviate or cure it. It includes the things done by the patient to carry out specific directions given for these ends by a physician.").[22]  Because Unum's administrative process was procedurally flawed and violated ERISA's requirement of a full and fair review, remand to the plan for a full and fair review is warranted.[23]

---

[22] In Barkerding, a patient burned his foot following his doctor's order to use heat to heal an infected ulcer on the foot, but the patient used a higher watt bulb than necessary.  As a result of being badly burned, the plaintiff's toe was amputated.  In upholding the denial of accidental loss benefits, the Fifth Circuit held that "[t]he excess of heat is like an overdose of a prescribed drug ignorantly taken by a patient, the effect of which is held to be the result of medical treatment" under accidental death policies excluding from coverage death resulting from medical treatment.

[23] Unum argues that remand is unnecessary, but fails to persuade the Court that the futility exception to the rule of remand applies here.  See Lafleur, 563 F.3d at 158 n.22 (noting that "[a]n administrator's failure to substantially comply with the procedural requirements of ERISA will usually prevent a plaintiff from adequately developing the administrative record and presenting his arguments, so the futility exception should be narrowly construed and sparingly applied.").

For the foregoing reasons, IT IS ORDERED: that the parties' cross motions for summary judgment are DENIED and the case is hereby REMANDED to the plan administrator for further proceedings and reconsideration within 60 days, consistent with this Order and Reasons.  IT IS FURTHER ORDERED: that this case is hereby stayed pending the plan administrator's review.  Upon proper motion, counsel may reinstate this case to the active docket.

New Orleans, Louisiana, August 13, 2018

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE